# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **LYNITA SNOW**, an Individual, | Case No. 3:23-cv-01393-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **WOMEN'S HEALTHCARE ASSOCIATES, LLC**, A Limited Liability Corporation; **CANDACE TROTTER**, An Individual; and **DOES 1-50**, Inclusive, | |
| Defendants. | |

Ray D. Hacke, Pacific Justice Institute, 317 Court St. NE, Suite 202, Salem, OR 97301. Attorney for Plaintiff.

Karen M. O'Kasey and Zachariah H. Allen, Hart Wagner, LLP, 1000 SW Broadway, Suite 2000, Portland, OR 97205. Attorneys for Defendants.

**IMMERGUT, District Judge.**

Before this Court is a Motion for Summary Judgment ("Mot.") brought by Defendants

Women's Healthcare Associates ("WHA"), Candace Trotter—WHA's Director of Human

Resources—and unnamed Does 1 through 50 (collectively, "Defendants") against Plaintiff

PAGE 1 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT

Lynita Snow, ECF 15. Plaintiff's former employer WHA required her to be vaccinated against COVID-19. When Plaintiff refused on religious grounds, WHA denied her first and second requests for a religious exemption and eventually terminated her employment when she refused to be vaccinated. Plaintiff then sued Defendants, asserting three claims based on the same factual allegations: (1) Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, against Defendant WHA; (2) Religious Discrimination under O.R.S. 659A.030(1)(a) against WHA; and (3) Aiding and Abetting Religious Discrimination under O.R.S. 659A.030(1)(g) against Defendant Trotter and unnamed Does. Complaint ("Compl."), ECF 1 ¶¶ 37–63. Defendants argue that they are entitled to summary judgment on all of Plaintiff's claims because accommodating her religious beliefs would have constituted an undue hardship to WHA.

For the reasons below, this Court GRANTS Defendants' Motion for Summary Judgment, ECF 15. Defendants have provided sufficient evidence demonstrating that accommodating Plaintiff would have posed an undue hardship to WHA. The Court finds this Motion suitable for decision without oral argument. Local Rule 7-1(d)(1); *see also Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (affirming grant of summary judgment for defendant without oral argument because "a district court can decide the issue without oral argument if the parties can submit their papers to the court"). Accordingly, the oral argument set for September 6, 2024 is VACATED.

## LEGAL STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where a defendant moves for summary judgment on an affirmative defense, and therefore carries the burden of proof on this defense at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty*

*Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (per curiam) (noting that a party moving for summary judgment on a claim for which it will have the burden at trial "must establish beyond controversy every essential element" of the claim (internal quotation marks omitted)).

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Even when no objection is made, a court may, in its discretion, consider the admissibility of evidence offered at summary judgment. *See Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016). In particular, "[b]ecause summary judgment qualifies as a substitute for a trial, and hearsay (absent an exception or exclusion) is inadmissible at trial, a motion for summary judgment may not be supported by hearsay. Courts have likewise held that papers opposing a motion for summary judgment may also not be supported by hearsay." *Cherewick v. State Farm Fire & Cas.*, 578 F. Supp. 3d 1136, 1157 (S.D. Cal. 2022) (citations and emphasis omitted).

## BACKGROUND

### A. Undisputed Facts

Defendant WHA is a limited liability corporation that provides healthcare for women of all ages. Declaration of Brian Kelly ("Kelly Decl."), ECF 16 ¶ 3; Compl. Ex. "A," ECF 1 at 13. WHA operates several clinics in the greater Portland, Oregon area. Kelly Decl., ECF 16 ¶ 3. It offers gynecological services, perinatal care, behavioral and mental-health services, and general wellness care. *Id.*

WHA hired Plaintiff on April 21, 2021. Declaration of Lynita Snow ("Snow Decl."), ECF 19 ¶ 3. Plaintiff was employed as an in-person medical receptionist, a role requiring direct interaction with patients and visitors. Kelly Decl., ECF 16 ¶ 4; Job Description, ECF 16-1 at 1

("Essential Job Functions: Greets patients and visitors in person or on the telephone . . .
Schedules and confirms appointments in person or by telephone . . . ."). Plaintiff was also
responsible for collecting insurance and billing information from patients, completing office
tasks including delivering mail throughout the office, cleaning the reception area and waiting
room, maintaining office equipment, and attending WHA and clinic meetings. Job Description,
ECF 16-1 at 1. Many of WHA's healthcare providers circulate between WHA facilities and
perform services at other healthcare facilities. Kelly Decl., ECF 16 ¶ 5.

Throughout the COVID-19 pandemic, WHA closely monitored emerging state and
federal guidance on the virus and preventative measures, including the effectiveness of COVID-
19 vaccines. Kelly Decl., ECF 16 ¶¶ 7, 9. WHA specifically monitored information from the
Centers for Disease Control and Prevention ("CDC") and the Oregon Health Authority ("OHA").
*Id.* ¶ 8.

During the week of August 21, 2021, the CDC reported that Oregon COVID-19
hospitalizations spiked to a then-all-time high of 688, a 750% increase over a few weeks. Kelly
Decl., ECF 16 ¶ 8; Ex. 3, ECF 16-3 at 1. The week of September 18, 2021, the CDC reported
212 COVID-19 deaths in Oregon, bringing the state's total COVID-19 death count to 4,166.
Kelly Decl., ECF 16 ¶ 8; Ex. 3, ECF 16-3 at 2–3. At that time, the United States death toll
measured from the beginning of the pandemic exceeded 700,000. Kelly Decl., ECF 16 ¶ 8; Ex. 3,
ECF 16-3 at 4.

On August 13, 2021, Oregon Governor Kate Brown issued an Executive Order requiring
healthcare and other workers to be vaccinated against COVID-19. Or. Exec. Order No. 21-29
(Aug. 13, 2021). Then, on August 25, 2021, the OHA promulgated an update to O.A.R. 333-

019-1010. O.A.R. 333-019-1010 (repealed 2023).[1] The new rule required "health[care] personnel and healthcare staff who work in healthcare settings to be vaccinated against COVID-19 or request a medical or religious exception" no later than October 18, 2021. O.A.R. 333-019-1010, PH 42-2021, ECF 17-1 at 3–4. This rule was passed in response to the proliferation of the Delta variant in Oregon, which, in August 2021, "accounted for more than 98% of COVID-19 infections in Oregon" as this variant was "approximately 2-3-fold more transmissible than early wild-type COVID-19 variants." *Id.* at 1.

In response to the Governor's Executive Order, WHA enacted a policy on August 20, 2021 requiring all employees to be vaccinated against COVID-19, or obtain a religious or medical exemption, by October 18, 2021. Snow Decl., ECF 19 ¶ 6. Later that month, on August 30, 2021, Plaintiff sent her first religious exemption request to WHA Director of Human Resources, Candace Trotter. *Id.* ¶ 7. The accompanying letter to Plaintiff's first request stated:

> As a Christian, I believe God gave this body to live here on Earth and it house [sic] the Holy Spirit in me, who I am, how I am, is how God made me. It's my job to steward my gifts, including this body. The COVID-19 Vaccine is not something that upholds my commitment to stewardship.

First Letter, ECF 16-2.

On September 10, 2021, WHA employees Candace Trotter and Sam Beatty notified Plaintiff that WHA had denied her exemption request. Snow Decl., ECF 19 ¶ 8. Eight days later, Plaintiff submitted a second exemption request and letter. *Id.* ¶ 10; Second Letter, Ex. "A," ECF 19. In this letter, Plaintiff provided additional reasons for her refusal to receive the vaccine,

---

[1] *Free Or., Inc. v. Or. Health Auth.*, 329 Or. App. 460, 462 n.2 (2023).

including that "aborted stem cells were involved in the origination of the three [COVID]-19

shots," making "consumption of [the] vaccine an unthinkable act." Second Letter, Ex. "A," ECF

19. On September 20, 2021, Trotter emailed Plaintiff denying her second request for a religious

exemption to the WHA vaccine policy, stating: "[O]ur decision about your religious exemption

request for the COVID vaccine has not changed and it is final. I acknowledge that you don't

think it is respectful of your religious beliefs. It is the position of WHA that we must prioritize

the safety and health of our patients, employees, and community." Snow Decl., ECF 19 ¶ 13;

Email from Candace Trotter, ECF 19, Ex. "B." Accordingly, WHA terminated Plaintiff's

employment on October 12, 2021. Snow Decl., ECF 19 ¶ 17; Email from Candace Trotter, ECF

19, Ex. "B."

On September 25, 2023, Plaintiff filed her Complaint alleging religious discrimination.

Compl., ECF 1. Defendants filed their Motion for Summary Judgment on March 25, 2024. Mot.,

ECF 15.

## B.  Evidentiary Issues

Before turning to the substance of Defendants' Motion, there are various evidentiary

issues to address raised by materials offered in support of Plaintiff's Response. In opposing

summary judgment, Plaintiff provides her own Declaration with attached exhibits, Snow Decl.,

ECF 19. Defendants move to strike portions of Snow's Declaration and Response. Defendants'

Reply ("Reply"), ECF 21 at 2. Defendants argue that the portion of Snow's Declaration where

she "attest[s] to the circumstances of her pregnancy" and "her damages and mental distress" is

"irrelevant to defendants' affirmative defense of undue hardship." *Id.* (citing Snow Decl., ECF

19 ¶¶ 18–21, ¶ 23). Defendants further "move to strike that portion of plaintiff's response citing

2023 studies and articles about the effect of vaccines on pregnant women" because "Plaintiff

never raised her pregnancy as a basis to avoid vaccination while employed with WHA." *Id.* (citing Pl.'s Resp., ECF 18 at 11–13). This Court construes Defendants' motion to strike as an evidentiary objection. Local Rule 56-1(b). This Court addresses the admissibility of this evidence below and assesses its materiality in Section II.B.3.

When a party opposing summary judgment fails to comply with the formalities of Rule 56, a court may choose to be somewhat lenient in the exercise of its discretion to deal with the deficiency," but "discretionary leniency does not stretch so far that Rule 56[(c)] becomes meaningless." *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993). After reviewing Plaintiff's exhibits, this Court concludes that consideration of some of these materials for the purposes of this Motion would stretch Rule 56 too far.

Plaintiff introduces evidence in the body of her Response by providing hyperlinks to purported studies, reports, and articles. Defendants argue that some of these materials are irrelevant. Reply, ECF 21 at 2. Relevance objections "are generally unnecessary on summary judgment because they are duplicative of the summary judgment standard itself." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) (citation omitted). However, these materials are inadmissible for other reasons as discussed below.

As a threshold matter, "[t]o be considered by the court, documents must be authenticated by and attached to an affidavit that meets the requirements of [Rule] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550–51 (9th Cir. 1989). Plaintiff has not done so for any of these hyperlinked materials.

Much of Plaintiff's evidence[2] is identical to that provided in *MacDonald v. Or. Health & Sci. Univ.*, No. 3:22-CV-01942-IM, 2024 WL 3316199 (D. Or. July 5, 2024), in response to a motion for summary judgment, and is offered for the same purposes and without providing an expert. As this Court determined in *MacDonald*, such evidence is inadmissible hearsay, is not accompanied with expert testimony as needed to establish reliability, is not properly authenticated, and/or was submitted via a broken hyperlink. *MacDonald*, 2024 WL 3316199 at *3, 4, 13. Accordingly, this Court will not consider that evidence for the purposes of summary judgment.

The remaining hyperlinked materials include a news article by "osteopathic physician" and "best-selling author" Dr. Joseph Mercola from July 2023. Plaintiff directly quotes this source for the propositions that:

> "In February 2021 Pfizer launched a randomized, placebo-controlled, observer-blind study to evaluate the safety of its COVID-19 shot . . . in pregnant women."

> "[A]s the months passed, hundreds of thousands of pregnant women globally rolled up their sleeves to receive the vaccine, despite the absence of any clinical trials."

> "Pfizer experimented on 349 women, then halted the experiments because unborn babies kept winding up dead."

Pl.'s Resp., ECF 18 at 11–12. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). "It is axiomatic to state that newspaper articles are by their very

---

[2] Namely, the August 2021 National Geographic article; a July 2021 media statement made by then-CDC Director Rochelle P. Walensky; a March 2022 report provided by BioNTech to the U.S. Securities and Exchange Commission; a November 2021 academic analysis titled *Worldwide Bayesian Causal Impact Analysis of Vaccine Administration on Deaths and Cases Associated With COVID-19: A BigData Analysis of 145 Countries;* a December 2020 study purportedly conducted by Pfizer and BioNTech; and an August 2021 Reason.com article. Response, ECF 18 at 10–11, 13.

nature hearsay evidence and are thus inadmissible if offered to prove the truth of the matter asserted . . . ." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, No. CIV 87-987 PHX RCB, 1990 WL 126500, at *3 (D. Ariz. July 25, 1990). Plaintiff relies on the quoted statements for the truth—that Pfizer began this study at a time when no clinical trials on pregnant women had been conducted, and that it halted the study for the above reason. Because Plaintiff offers this article for a hearsay purpose, she must show that it falls within a hearsay exception or that the statements could be made admissible at trial through a different form. Plaintiff has not done so. Establishing the reliability of this article would also require expert testimony, which Plaintiff does not present.

Plaintiff next points to a purported news piece by Biotech Express from August 2022 for the proposition that "44 percent of pregnant women who participated in Pfizer's COVID-19 vaccine trials conducted by Pfizer lost their babies." Pl.'s Resp., ECF 18 at 12. The content of the article is hearsay as Plaintiff relies on it for its truth, namely, that the COVID-19 vaccine was not safe for pregnant women. Establishing its reliability would require expert testimony, which Plaintiff does not present. As proffered by Plaintiff, this evidence is not admissible at trial and this Court will not consider it for purposes of summary judgment.

Plaintiff proffers a post on a personal website by "True Crime Writer" John Leake from April 2024 for the proposition that "[o]ther studies have shown that COVID-19 vaccines taken by pregnant women have caused birth defects in their unborn children." Pl.'s Resp., ECF 18 at 12. Establishing the reliability of this post would require expert testimony, but Plaintiff does not provide any expert report. Plaintiff offers the statements contained in the post for the truth, namely, that studies have shown COVID-19 vaccines can and have caused birth defects in pregnant women. Because Plaintiff offers the contents of the post for a hearsay purpose, she

PAGE 9 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

must show that a hearsay exception applies or that the statements could be made admissible at trial through other means. Plaintiff has not done so. This Court will disregard this post for purposes of summary judgment.

## DISCUSSION

### A.  Undue Hardship Analysis under Title VII and O.R.S. 659A.030

Defendants argue that they are entitled to summary judgment for each of Plaintiff's claims because it would have posed an undue hardship to WHA as a matter of law to allow Plaintiff to work unvaccinated in a patient-facing role during the COVID-19 pandemic. Mot., ECF 15 at 10–16. Religious accommodation is not required under Title VII where it would place an "undue hardship" on the employer's business. 42 U.S.C. § 2000e(j). Undue hardship is an affirmative defense. *Bolden-Hardge v. Off. of the Cal. State Controller*, 63 F.4th 1215, 1224 (9th Cir. 2023). If the "employee establishes a prima facie case of failure to accommodate religion, the burden shifts to the employer to show '*either* that it initiated good faith efforts to accommodate reasonably the employee's religious practices *or* that it could not reasonably accommodate the employee without undue hardship.'" *Id.* (emphasis added) (quoting *Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 681 (9th Cir. 1998)). Defendants do not challenge Plaintiff's ability to make out a prima facie case of religious discrimination for the purposes of this Motion. Mot., ECF 15 at 10 n.3; Reply, ECF 21 at 2–3. The burden therefore shifts to Defendants to demonstrate that it was unable to reasonably accommodate Plaintiff without undue hardship.

As all Parties agree, Plaintiff's state law discrimination claim is subject to the identical analysis given that "O.R.S. 659A.030 is modeled after Title VII." *Pullom v. U.S. Bakery*, 477 F. Supp. 2d 1093, 1100 (D. Or. 2007); Mot., ECF 15 at 7; Pl.'s Resp., ECF 18 at 7.

Under recent Supreme Court precedent, undue hardship is "more than a *de minimis* cost," and is instead a "burden, privation, or adversity" that rises "to an excessive or unjustifiable level." *Groff v. DeJoy*, 600 U.S. 447, 468–69 (2023) (citation and internal quotation marks omitted). To determine whether an accommodation amounts to this level of burden, a court must consider if the "burden is substantial in the overall context of an employer's business." *Id.* at 468. Relevant considerations are the nature, size, and operating cost of the employer. *Id.* at 470–71. Plaintiff is correct that undue hardship is a fact-specific inquiry, *id.* at 468, and healthcare employers do "not automatically get a pass" for not accommodating employees who object to receiving the COVID-19 vaccine on religious grounds, Pl.'s Resp., ECF 18 at 17.

*Groff* did not change longstanding Title VII principles as interpreted in the case law. Rather, *Groff* set out to "clarify" the Title VII undue hardship standard. *Groff*, 600 U.S. at 447, 454; *see also id.* at 471 ("We have no reservations in saying that a good deal of the EEOC's guidance in this area is sensible and will, in all likelihood, be unaffected by our clarifying decision today."). Following *Groff*, district courts have continued to consider both economic and noneconomic costs when conducting the undue hardship analysis. *See, e.g.*, *Bordeaux v. Lions Gate Ent., Inc.*, Case No. 2:22-cv-04244-SVW-PLA, 2023 WL 8108655, at *13 (C.D. Cal. Nov. 21, 2023) (considering the safety risk an unvaccinated actor posed to her coworkers for the undue hardship analysis); *Kluge v. Brownsburg Cmty. Sch. Corp.*, No. 1:19-CV-02462-JMS-KMB, 2024 WL 1885848, at *17–20 (S.D. Ind. Apr. 30, 2024) (considering the cost of a teacher's policy on a public school's "mission to provide adequate public education that is equally open to all"). As in *MacDonald*, this Court holds that under the *Groff* test, a court may continue to consider both economic and non-economic costs in analyzing undue hardship, where

non-economic costs include "the cost to an employer's mission."[3] *MacDonald*, 2024 WL 3316199, at *6–7.

Further, like in *MacDonald*, this Court holds that undue hardship is properly viewed at the time the employer decided to deny an employee's requested religious exemption and then terminate his or her employment for refusing to obtain the COVID-19 vaccine. *Id.* The inquiry is confined to the information available to the employer when it made its undue hardship decision. *Id.* This approach comports with how courts analyze whether a plaintiff has alleged a prima facie case against an employer—by assessing the information the plaintiff provided to the employer and, thus, the information of which the employer had notice. *See Craven v. Shriners Hosps. for Child.*, No. 3:22-cv-01619- IM, 2024 WL 21557, at *4 n.3 (D. Or. Jan. 2, 2024). "It is axiomatic that an employer can make decisions based only on the information known to it at the time of the decision." *Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 888 (7th Cir. 2023), *vacated on denial of reh'g*, No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023). Although *Kluge* was vacated and remanded following the Supreme Court's ruling in *Groff*, this Court considers this aspect of the Seventh Circuit's decision to remain applicable and persuasive post-*Groff*. Considering only the information available to the employer at the time also ensures that employers are not held to an impossible standard, with courts judging an employer's decision with the benefit of hindsight. *MacDonald*, 2024 WL 3316199, at *7.

---

[3] Plaintiff argues that WHA cannot prove undue hardship because "WHA provides no statement of what financial costs it would have incurred had WHA provided Plaintiff a reasonable religious accommodation." Pl.'s Resp., ECF 18 at 14. However, the undue hardship analysis is not limited to monetary costs. *MacDonald*, 2024 WL 3316199, at *6.

PAGE 12 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

As explained below, Defendants have established that there is no dispute of material fact that Plaintiff's requested accommodation—masking and testing in lieu of receiving the COVID-19 vaccine—constitutes an undue hardship.

## B.  Defendants Have Established Undue Hardship as a Matter of Law

Under the undue hardship analysis just described, this Court concludes that Defendants are entitled to summary judgment. Based on the substantial costs WHA would have incurred if it permitted Plaintiff to work directly with patients while unvaccinated, coupled with the evidence and information available to WHA at the time it made its undue hardship decision, Defendants have established that there is no genuine issue of fact precluding summary judgment and they are entitled to judgment in their favor on the affirmative defense of undue hardship.

### 1.  Defendants' Evidence

Defendants attach two Declarations and four Exhibits to their Motion for Summary Judgment. Kelly Decl., ECF 16. Because Defendants bear the burden on their affirmative defense, the following discussion walks through their evidence.

Brian Kelly has been the CEO of WHA since 1999. Kelly Decl., ECF 16 ¶ 2. Mr. Kelly attests that, "[t]hroughout the COVID-19 pandemic, WHA closely monitored emerging state and federal guidance on the virus and preventative strategies as part of our commitment to combat the pandemic and to protect the health of our patients and staff." *Id.* ¶ 7. WHA specifically monitored information from the CDC and the OHA throughout this time period. *Id.* ¶ 8. Information from these sources "indicated that, for the week of August 21, 2021, Oregon COVID-19 hospitalizations had spiked 750% in a few short weeks, to a then-all-time high of 688. The week that plaintiff submitted her second vaccination request, the CDC reported 212 COVID-19 deaths in Oregon, bringing the state's total to 4,166. Nationally, the CDC was

reporting that the virus had claimed over 700,000 lives, with another 2,000 dying every day." *Id.* These figures are supported by data retrieved from the CDC and OHA websites submitted in Exhibit 3, ECF 16-3. Mr. Kelly attests that this "data accurately reflects the picture being presented to WHA in August 2021." Kelly Decl., ECF 16 ¶ 8.

Mr. Kelly states that WHA also monitored "information about preventative measures, including the effectiveness of COVID-19 vaccines." *Id.* ¶ 9. Mr. Kelly reports that WHA's monitoring included reviewing the authorities cited in O.A.R. 333-019-1010. *See id.* This rule linked to six OHA sources, two studies, and seven CDC reports on COVID-19. O.A.R. 333-019-1010, PH 42-2021, ECF 17-1 at 2–3. These sources emphasize the efficacy of COVID-19 vaccines at reducing transmissibility of the virus and the severity of infections. *See, e.g.*, CDC COVID-19 Vaccine Breakthrough Case Investigations Team, *COVID-19 Vaccine Breakthrough Infections Reported to CDC—United States, January 1–April 30, 2021*, Ctrs. for Disease Control & Prevention (May 28, 2021) [https://perma.cc/47B2-H7TU] (hereinafter CDC May Report). The sources also state that pregnancy, age, and other medical conditions "increase the risk for serious outcomes from COVID-19 among unvaccinated persons." Athalia Christie & John T. Brooks et al., *Guidance for Implementing COVID-19 Prevention Strategies in the Context of Varying Community Transmission Levels and Vaccination Coverage*, Ctrs. for Disease Control & Prevention (July 27, 2021) [https://perma.cc/L47R-76NF].

These sources further state that "vaccine breakthrough infections occur in only a small fraction of all vaccinated persons," CDC May Report, and unvaccinated individuals "were more than twice as likely to be reinfected" than those who were vaccinated. Alyson M. Cavanaugh & Kevin B. Spicer et al., *Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19*

*Vaccination — Kentucky, May–June 2021*, Ctrs. for Disease Control & Prevention (Aug. 13, 2021) [https://perma.cc/TQ84-F3FB].

> The rule relied upon by WHA states:

> > People infected with the Delta variant have higher viral loads and a shorter incubation period. There is emerging evidence that people infected with the Delta variant have similar viral loads regardless of vaccination status suggesting that even vaccine breakthrough cases may transmit this variant effectively. Being vaccinated, is therefore critical to prevent spread of Delta. Health care providers have contact with multiple patients over the course of a typical day . . . . Individuals cared for by health care providers are more likely than the general public to have conditions that put them at risk for complications of COVID-19. The Delta variant is causing a surge in unvaccinated cases and vaccine breakthrough cases.

O.A.R. 333-019-1010, PH 42-2021, ECF 17-1 at 1. Mr. Kelly states that, based on these and other authorities, "WHA believed that unvaccinated staff were more likely to spread the virus to others (including vaccinated individuals), to transmit higher viral loads, and to experience more serious illness and a higher risk of need for hospitalization upon contracting COVID-19." Kelly Decl., ECF 16 ¶ 9.

Mr. Kelly declares that "WHA determined that masking and weekly COVID testing no longer constituted a reasonable alternative to being vaccinated" as of August 2021. *Id.* ¶ 10. This determination "follow[ed] the Food and Drug Administration's full approval of the Pfizer-BioNTech vaccine formula and the state's healthcare-worker vaccine mandate." *Id.* Further, all evidence available to WHA "indicated that vaccines were the single most effective tools for protecting individuals and those around them from COVID-19 and its severest effects." *Id.*

Mr. Kelly attests that, at the time, the available evidence demonstrated "drawbacks with testing" such as delayed test results, the possibility of false results, and contraction and dissemination of COVID-19 in between tests. *Id.* In addition, he states that "neither testing nor

masking did anything to improve an individual's immune system response or to otherwise lessen the risk of severe illness or hospitalization upon contracting COVID-19." *Id.*

Mr. Kelly concludes: "In view of the state's mandate, WHA determined that employing individuals who were not vaccinated against COVID-19 in any of our facilities: (1) posed an unacceptable and unnecessary safety risk to our patients; and (2) posed an unacceptable and unnecessary safety risk to our vaccinated staff." *Id.* ¶ 11.

### 2. Defendants' Evidence Establishes that Accommodating Plaintiff Posed an Undue Hardship

Defendants have established that accommodating Plaintiff by allowing her to work unvaccinated, in-person, in a patient-facing role while masking and submitting to weekly testing would have created a substantial increased cost, and therefore an undue hardship, during the fall of 2021.

The "overall context" of WHA's business was to provide women's health care. When O.A.R. 333-019-1010 (2021) was updated to require healthcare worker vaccinations beginning on August 21, 2021, the number of new Oregon hospital admissions for COVID-19 had risen 750% from the previous month, according to CDC data. Kelly Decl., ECF 16 ¶ 8; Ex. 3, ECF 16-3. The week that Plaintiff submitted her second letter, the CDC reported 212 COVID-19 deaths in Oregon, bringing the state's total to 4,166. Kelly Decl., ECF 16 ¶ 8; Ex. 3, ECF 16-3 at 3. The rule stated that it was "vital" for "health care providers and health care staff to be vaccinated against COVID-19 in order to protect themselves [and] their patients." O.A.R. 333-019-1010, PH 42-2021, ECF 17-1 at 1. Combatting the pandemic and protecting the health of WHA

patients and staff, Kelly Decl., ECF 16 ¶ 7, was critical to its "legitimate mission," *MacDonald*, 2024 WL 3316199, at *11.[4]

Based on the information and evidence available to WHA at the time, WHA concluded that allowing an unvaccinated employee to work directly with patients and staff posed a substantial increased cost. CDC and OHA guidelines, which WHA reasonably determined bore indicia of validity and reliability, led WHA to conclude that an unvaccinated in-person employee, who worked directly with staff and patients—including those with increased risk for serious outcomes from COVID-19 due to pregnancy or other conditions—would put these staff and patients at risk. Risking the health of staff and patients would compromise WHA's mission to provide safe and effective women's healthcare. As this Court held in *MacDonald*, Title VII does not require entities like WHA to incur this substantial cost. *MacDonald*, 2024 WL 3316199, at *12 (first citing *Bushra v. Main Line Health, Inc.*, CIVIL ACTION NO. 23-1090, 2023 WL 9005584, at *8 (E.D. Pa. Dec. 28, 2023); then citing *Antredu v. Mass. Dep't of Youth Servs.*, CIVIL ACTION No. 22-12016-WGY, 2024 WL 1539725, at *5 (D. Mass. Apr. 9, 2024); and then citing *Bordeaux*, 2023 WL 8108655, at *13). Although *MacDonald* differs in that the plaintiff there was a neonatal nurse, 2024 WL 3316199 at *1, there remains a substantial cost for an in-person healthcare staff member who is "one of the first . . . employees to interact with patients and their family members when they arrive[,]" handles intake and registration, and

---

[4] Plaintiff places great weight on the fact that "WHA served patients who were unvaccinated even after the OHA issued its Vaccine Mandate for healthcare workers" and argues that WHA was not truly interested in prioritizing the health and safety of patients and staff. Pl.'s Reply, ECF 18 at 13. This point does not create a dispute of material fact as the state's vaccine mandate did not require healthcare providers to accept only vaccinated patients. *See* O.A.R. 333-019-1010, PH 42-2021, ECF 17-1. Further, allowing some patients to receive health care despite being unvaccinated does not undercut the important health benefits from requiring patient-facing staff to be vaccinated.

works in "close proximity to patients" to be unvaccinated. *Robinson v. Child.'s Hosp. Bos.*, No. CV 14-10263-DJC, 2016 WL 1337255, at *2, 8, 10 (D. Mass. Apr. 5, 2016) (applying the "more than a *de minimis* cost" standard, even though pre-*Groff*, to find allowing an emergency department administrative associate to work unvaccinated in a children's hospital amounted to an undue hardship for defendant hospital because it would have increased the risk of transmitting illness to its vulnerable patient population).

WHA has also shown that masking and weekly testing would have presented an undue hardship. *See* Mot., ECF 15 at 13; Defs.' Reply, ECF 21 at 7. Based on the information available to WHA at the time, relying on testing meant running the risks that: (1) test results would be delayed; (2) the test resulted in a false negative; and (3) individuals would contract and spread the virus between tests. *See* Kelly Decl., ECF 16 ¶ 10. In addition, WHA understood, based on the available information, that neither masking nor testing would improve an individual's immune response or lessen the risk of severe illness or hospitalization upon contracting COVID-19. *Id.* Moreover, the State of Oregon had already imposed a mandatory masking requirement for healthcare providers and staff. O.A.R. 333-010-1011 (as adopted August 20, 2021). The fact that the Oregon vaccine mandate supplemented the existing mask requirement suggested that masks by themselves were insufficient and did not constitute a reasonable alternative to vaccination for healthcare workers. Based on Defendants' evidence, "it would have been more dangerous to allow Plaintiff to wear a mask than it would have been to require that she undergo vaccination." *Aukamp-Corcoran v. Lancaster Gen. Hosp.*, No. CV 19-5734, 2022 WL 507479, at *6, 8 (E.D. Pa. Feb. 18, 2022) (granting summary judgment to defendant hospital on nurse's Title VII religious discrimination claim under "more than a *de minimis* cost" standard even though pre-*Groff*).

PAGE 18 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff argues that masking would not present an undue hardship because, unlike the actor-plaintiff in *Bordeaux*, 2023 WL 8108655, here "Plaintiff would not have had to remove a facemask to perform her duties as a receptionist." Pl.'s Resp., ECF 18 at 15. Plaintiff's attempt to distinguish *Bordeaux* is not well-taken as both she and the *Bordeaux* plaintiff were unvaccinated employees in direct contact with co-workers and clients. Masking, even if Plaintiff infrequently removed her mask, is not workable in the healthcare setting given that Plaintiff worked closely with patients.[5] Plaintiff further cites *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610 (5th Cir. Feb. 17, 2022), and *Keene v. City & County of San Francisco*, No. 22-16567, 2023 WL 3451687 (9th Cir. May 15, 2023), neither of which analyzes undue hardship,[6] and thus provide no support for finding a material dispute here. Defendants have shown that accommodating Plaintiff posed an undue hardship to WHA.

### 3. Plaintiff's Evidence Fails to Create a Genuine Issue of Material Fact

Plaintiff argues that there are genuine issues of material fact as to whether (1) religious animus was the true reason Defendants terminated Plaintiff; (2) requiring Plaintiff to be vaccinated against COVID-19 was necessary; and (3) whether Plaintiff's requested

---

[5] Plaintiff also cites *Dunbar v. Walt Disney Co.*, however she fails to provide a complete citation to the supposed summary judgment opinion. Pl.'s Resp., ECF 18 at 15. Even if the case stands for what Plaintiff claims, unvaccinated actors pose a much lighter burden than in-person healthcare staff who are in direct contact with co-workers and potentially high-risk patients. There is no "triable issue of fact here concerning whether allowing Plaintiff to work unvaccinated in WHA's Tualatin office posed a danger to infants and small children," Pl.'s Resp., ECF 18 at 16, because Plaintiff has not created a dispute of material fact regarding the information available to WHA when it made its undue hardship decision, as discussed in this Opinion.

[6] As Defendants point out, the only mention of undue hardship is by a dissenting judge in *Sambrano*, who stated that he would have denied issuance of the preliminary injunction because the employer airline had demonstrated that employing the unvaccinated was an undue hardship. *Sambrano*, 2022 WL 486610, at *29–31 (Smith, J., dissenting); Defs.' Reply, ECF 21 at 12 n.3.

accommodation–masking and testing–constitutes an undue hardship. Pl.'s Resp., ECF 18 at 7–17. As explained below, Plaintiff's evidence, viewed in the light most favorable to her, is insufficient to dispute the only matter at issue in Defendants' Motion—whether accommodating Plaintiff would have constituted an undue hardship based on the evidence available to WHA at the time it made its undue hardship decision.

Starting with her first argument, Plaintiff is incorrect that there is a disputed fact as to whether WHA acted with discriminatory motives. Pl.'s Resp., ECF 18 at 7–9. Defendants contend that animus is not material to undue hardship and that, in any event, Plaintiff lacks evidence of animus. Reply, ECF 21 at 3–5. As this Court previously held, a "[d]efendant's allegedly discriminatory motives are not material to [a] Title VII claim for failure to accommodate" where the defendant moves for summary judgment on undue hardship, "and so any related disputes of fact do not preclude summary judgment" here. *See MacDonald*, 2024 WL 3316199, at *5.[7]

---

[7] Proof of religious animus can be relevant to a disparate treatment claim based on religious discrimination. *See Bodett v. CoxCom, Inc.*, 366 F.3d 736, 743–44 (9th Cir. 2004) ("In the context of a disparate treatment claim based on religious discrimination . . . bias or animus against her religion [can] give rise to an inference of discrimination" under Title VII.). However, Plaintiff failed to sufficiently plead a claim for disparate treatment. In her Complaint, Plaintiff did not use the words "disparate treatment," nor did she allege that she was qualified for her position, nor that similarly situated individuals outside of her protected class received more favorable treatment. *See Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (reciting the elements of a prima facie case of disparate treatment discrimination as membership in a protected class, that she was qualified for her position, that she was subject to an adverse employment action, and that similarly situated individuals outside her protected class were treated more favorably); Compl., ECF 1. Thus, Plaintiff failed to provide Defendants with sufficient notice—in the Complaint, exhibits to the Complaint, or any other document—of any disparate treatment theory. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292, 1294 n.8 (9th Cir. 2000) (holding district court did not err in barring plaintiffs from asserting disparate impact theory at summary judgment when notice was not given to defendant).

PAGE 20 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Even if discriminatory motives belonged in the undue hardship analysis, there is no evidence of such motives here. Plaintiff's asserted "direct evidence" of animus or pretext is Candace Trotter's alleged statement that Plaintiff's religious views are "a belief, not a practice." Pl.'s Resp., ECF 18 at 8. This statement is not "clearly . . . discriminatory" but rather requires an "inference or presumption" of animus. *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005). In addition, this statement is not enough to make "an affirmative case that [WHA] is biased" or to discredit WHA's proffered explanation. *Id.* Neither is the fact that WHA denied Plaintiff's two exemption requests or that Trotter mentioned health and safety concerns in response to Plaintiff's second exemption request. Plaintiff cites *Makhzoomi v. Southwest Airlines Co.* in support, but the plaintiff in that case pointed to "a number of inconsistencies in the record" regarding the defendants' motivation for their actions. 419 F. Supp. 3d 1136, 1151 (N.D. Cal. 2019). In contrast, the evidence in this case shows that WHA consistently named staff and patient safety as the reasons why it could not accommodate Plaintiff.[8]

Further, courts "only require that an employer honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even baseless.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (quoting *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001)). As in *Villiarimo*, Plaintiff has presented no evidence here to meet her burden to show

---

[8] Plaintiff also cites *Arizona v. Mayorkas*, 143 S. Ct. 1312, 1315 (2023) (statement of Gorsuch, J.), for the proposition that "fear and the desire for safety" during the COVID-19 pandemic "motivated state governments to justify repeated infringements on the right of houses of worship to hold services when other gathering places remained open," and *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 17–18 (2020), for the proposition that religious congregations were targeted "for unnecessarily harsh treatment in the name of protecting the public during the COVID-19 pandemic." Pl.'s Resp., ECF 18 at 8. The dicta from these cases outside of the Title VII context has no bearing on whether Plaintiff can provide evidence of animus in this case.

that Defendants did not honestly believe their proffered reasons. *Id.* Although Plaintiff is correct that she is only required to produce "very little" direct evidence of discriminatory intent to survive a motion for summary judgment, *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1128 (9th Cir. 2000), she must still offer some "concrete relevant particulars," *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) (citing *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988)). She has not done so.

As to her second argument, Plaintiff erroneously claims that there is a dispute of material fact as to whether requiring Plaintiff to receive a COVID-19 vaccine was "necessary" to stop the spread of COVID-19 at WHA. Pl.'s Resp., ECF 18 at 10 (citing *Bolden-Hardge*, 63 F.4th at 1227). In raising necessity, Plaintiff blurs the line between Title VII failure to accommodate and disparate impact claims. *See Harriss v. Pan Am. World Airways, Inc.*, 649 F.2d 670, 674 (9th Cir. 1980) ("The [Bona Fide Occupational Qualification] defense is applicable to employment practices that purposefully discriminate . . .while the Business Necessity defense is appropriately raised" in disparate impact claims.). Regardless, business necessity is an affirmative defense, *Bolden-Hardge*, 63 F.4th at 1228, and Defendants have not argued it in their Motion, *see* Mot., ECF 15. There is therefore no genuine dispute as to necessity.

The remainder of Plaintiff's evidence fails to raise a genuine dispute of material fact as to Defendants' undue hardship determination. *See Isaac v. Exec. Off. of Health & Hum. Servs.*, CIVIL ACTION NO. 22-11745-RGS, 2023 WL 8544987, at *2 (D. Mass. Dec. 11, 2023) (concluding on summary judgment that accommodating the plaintiff's COVID-19 vaccine exemption request would pose an undue hardship to plaintiff's employer where plaintiff "challenge[d] only the underlying assumption that the vaccine protects against infection" but

presented no evidence to support that challenge), *appeal dismissed*, No. 23-2065, 2024 WL 3159284 (1st Cir. Feb. 22, 2024).

In her Declaration, Plaintiff attests to her damages and mental distress. Snow Decl., ECF 19 ¶¶ 18, 20–21, 23. This Court finds that this portion of Plaintiff's Declaration does not create a genuine dispute of material fact because Plaintiff's damages are not presently at issue by way of the pending motion for summary judgment. The only issue in this motion is undue hardship, of which proof of damages is not required. Therefore, any evidence about Plaintiff's damages and mental distress does not preclude summary judgment.

In her Declaration, Plaintiff attests to the circumstances of her pregnancy and objection to the vaccine on those grounds. Snow Decl., ECF 19 ¶ 19. Plaintiff did not request a medical exemption based on her pregnancy or any other condition. *See* First Letter, ECF 16-1; Second Letter, Ex. "A," ECF 19. Plaintiff concedes that she did not inform WHA about her pregnancy. *See* Snow Decl., ECF 19 ¶ 19. In fact, Plaintiff was not even aware of her pregnancy until *after* she "learn[ed] of WHA's intent to fire [her]." *Id.* Even though "both before and after conceiving, [she] ha[d] legitimate concerns about the impact taking a COVID-19 vaccine would have not just on [her] . . . [and her] unborn child," there is no evidence that Plaintiff shared these concerns with WHA. Plaintiff's pregnancy was thus not information available to WHA at the time it made its undue hardship decision and does not create a dispute of material fact. Further, because Plaintiff did not mention her pregnancy in her exemption request or accompanying letters, she cannot now use it as a basis for holding Defendants liable. *See Craven*, 2024 WL 21557, at *4 n.3 (noting that "under the second element of a prima facie case, the conflict a Title VII [p]laintiff alleges must be the same conflict of which he informed his employer," meaning what was alleged in the exemption form).

As discussed above, much of Plaintiff's proffered evidence is inadmissible and thus cannot be considered for resolving this Motion. Further discussion of this evidence is warranted.

Plaintiff includes in her Response a post authored by John Leake from April 2024 to establish that "studies have shown that COVID-19 vaccines taken by pregnant women have caused birth defects in their unborn children." Pl.'s Resp., ECF 18 at 12. Setting aside issues of authentication and hearsay, this post does not bear on the question at issue in this Motion. This post describes a paper published in September 2023 and other more "recent" news, which was not available at the time that WHA made its decision to terminate Plaintiff's employment in 2021. It would therefore be inappropriate to consider it for the undue hardship analysis.

Plaintiff cites a news piece from Biotech Express published in August 2022. It describes the results of a crowdsourced research project that was released in 2022. Putting aside the evidentiary issues detailed above, this news piece still does not create a genuine issue of fact. Research from the summer of 2022 does not create a triable issue of fact about what WHA understood in 2021.

Plaintiff provides a news article written by Dr. Joseph Mercola published in July 2023. It describes a Pfizer study that began in 2021, but the results of this study were not yet available at the time WHA decided to terminate Plaintiff's employment in fall 2021. For this reason, in addition to the evidentiary issues described above, it is not appropriate to consider this article for the undue hardship analysis.

Most important, Plaintiff supplies no evidence to dispute the sources that WHA relied on. Plaintiff claims that WHA "seems to have been rather selective in what it paid attention to," but Plaintiff offers no contradictory studies from the relevant period, failing to support her claim that the "vaccines did not prevent those who received them from contracting or transmitting COVID-

19." Pl.'s Resp., ECF 18 at 10. Defendants' evidence regarding the effectiveness of the COVID vaccine is undisputed. Plaintiff also claims that "**[h]ow** vigilantly WHA monitored the vaccines" is a disputed fact." *Id.* (emphasis in original). However, Plaintiff has offered no evidence to dispute Mr. Kelly's statement that WHA "closely monitored" COVID-19 guidance. *See* Kelly Decl., ECF 16 ¶ 7.

For these reasons, Defendants' Motion for Summary Judgment is granted on Plaintiff's Title VII and state law discrimination claims. There is no dispute that allowing Plaintiff to wear a mask and submit to weekly testing in lieu of vaccination would have posed a substantial cost to WHA's patient and workplace safety mission based on the information that WHA had at the time it denied Plaintiff's request for exemption.

## C. Defendants Are Entitled to Summary Judgment on Plaintiff's Aiding-and-Abetting Claim

Plaintiff concedes that the aiding-and-abetting claim is dependent upon the success of the first two claims. Pl.'s Resp., ECF 18 at 19. Finding that there is no genuine dispute regarding a predicate "act" of religious discrimination prohibited under O.R.S. 659A.030 because employing Plaintiff while unvaccinated would have constituted an undue hardship to WHA, this Court GRANTS Defendants' Motion for Summary Judgment on the aiding-and-abetting claim.

### CONCLUSION

In sum, Defendants have established "beyond controversy" that Plaintiff's decision not to vaccinate amounted to a substantial cost to the conduct of WHA's business, namely, its mission to protect the health and safety of its patients and staff. The evidence available to WHA in the fall of 2021 established that it would have been an undue hardship to allow healthcare staff in direct contact with coworkers and potentially high-risk patients to be unvaccinated because it would have increased the risk of the spread of COVID-19, the severity of infection, the need for

PAGE 25 – OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

hospitalization, and the risk of reinfection. Given this undisputed evidence, WHA has established that accommodating Plaintiff's religious beliefs would have posed an undue hardship under Title VII and state law. Defendants' Motion for Summary Judgment, ECF 15, is GRANTED.

**IT IS SO ORDERED.**

DATED this 2nd day of August, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge